UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM COOP,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>FUJITSU GROUP WELFARE BENEFIT PLAN,<br><br>　　　　Defendant. | No.   2:18-cv-01838<br><br>COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS |

Plaintiff William Coop, through his attorneys, alleges:

1.　　This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

COMPLAINT - 1
No.   2:18-cv-01838

2. Plaintiff William Coop is, and was at all times relevant, a resident of Buckley, located in Pierce County, Washington.

3. Plaintiff was at all relevant times a covered participant under the Fujitsu Group Welfare Benefit Plan (the "Plan"), an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff and his dependents were entitled to health care benefits.

4. The mental health benefits under the Plan were administered by Magellan Behavioral Health.

5. Plaintiff is informed and believes that the Plan has its principal place of business in the State of Washington, is authorized to transact and is transacting business in this judicial district, the Western District of Washington, and can be found in the Western District of Washington.

6. Plaintiff lives in this district, the Plan can be found in this district, and the claims at issue herein were specifically administered in this judicial district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

**FIRST CLAIM FOR RELIEF**

**DENIAL OF PLAN BENEFITS**

7. Plaintiff's daughter, J.C.[1], is a 25-year-old young woman with a history of an eating disorder. Her eating disorder began at age 13 after she was removed from her family home due to her mother abusing her daily. J.C. subsequently moved back into the home with her mother.

8. In addition to her eating disorder, J.C. also self-harmed through cutting and burning. She had periods of disassociation related to trauma suffered as a child. She had two suicide attempts in 2009 at age 16.

9. In February 2015, at age 22, J.C. experienced a relapse and stopped eating. She was hospitalized for medical stabilization and a nasogastric tube was used for feeding. She

---

[1] Due to the sensitive mental health issues involved in the case, Plaintiff's daughter is referenced by a pseudonym.

COMPLAINT - 2
No.  2:18-cv-01838

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614   Fax 206.905-2342

showed signs of renal failure. She continued to avoid eating food and purged any food she consumed. She had hallucinations related to post traumatic stress flashbacks.

10. On April 30, 2015, J.C. admitted to Eating Recovery Center ("ERC") for residential treatment of her eating disorder. She had lost 12 pounds since early March 2015. Upon admission, J.C. claimed that she was too big and needed to lose weight. J.C. was diagnosed with an eating disorder, generalized anxiety disorder, post-traumatic stress disorder, dissociative identity disorder, and major depressive disorder.

11. Magellan initially approved benefits for J.C.'s residential treatment.

12. On or about May 28, 2015, Magellan denied further benefits for J.C.'s residential treatment.

13. Due to Magellan's denial, J.C. transitioned to partial hospitalization at ERC on May 29, 2015.

14. Magellan approved benefits for J.C.'s partial hospitalization from May 29, 2015 through July 16, 2015.

**Partial Hospitalization From July 17, 2015 to August 4, 2015**

15. On July 17, 2015, Magellan denied further benefits for J.C.'s partial hospitalization on the basis that treatment was not medically necessary.

16. J.C. required further partial hospitalization because she frequently dissociated and hallucinated. On the date of the denial, J.C. hallucinated and believed she saw her mother. She harmed herself while she dissociated. She tried to purge after disassociating but was stopped by staff. She expressed her beliefs that she was too fat, took up too much space, deserved to starve to death, and should hurt herself. She completed only 60% of her meals.

17. J.C. remained in partial hospitalization and Plaintiff incurred the cost.

18. Magellan also denied J.C.'s appeals from the July 17, 2015 denial of partial hospitalization.

19. On August 3 and 4, 2015, J.C. had increasing auditory hallucinations telling her that she should run out into traffic and kill herself. She admitted that she was unable to keep herself safe.

COMPLAINT - 3
No.   2:18-cv-01838

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

20. On August 5 through 9, 2015, J.C. voluntarily admitted to inpatient psychiatric hospitalization at Overlake Hospital due to her increased urges to follow through with her suicide plan. While at Overlake, J.C. restricted and purged food. J.C. was placed on intravenous fluids and stated her desire to starve herself to death.

### Residential Treatment From August 10, 2015 to August 19, 2015

21. On August 10, 2015, J.C. returned to residential treatment at ERC.

22. On August 13, 2015, Magellan denied benefits for J.C.'s residential treatment on the basis that treatment was not medically necessary.

23. At the time of Magellan's denial, J.C. required residential treatment because she was unable to eat, unable to control her purging and self-harming, and disassociated frequently.

24. J.C. remained in residential treatment and Plaintiff incurred the cost.

25. Magellan also denied J.C.'s appeals from the August 13, 2015 denial of residential treatment.

### Partial Hospitalization From August 20, 2015 to September 20, 2015

26. J.C. transitioned to partial hospitalization on August 20, 2015.

27. However, on August 21, 2015, Magellan denied benefits for J.C.'s partial hospitalization as of August 20, 2015 on the basis that treatment was not medically necessary.

28. The day of Magellan's denial, J.C. collapsed in treatment and convulsed in a grand mal seizure. She was transported to Overlake Hospital Emergency Room. She was prescribed medication for seizure prevention and returned to ERC.

29. J.C. required partial hospitalization because she required supervision during all meals. J.C. reported that without supervision she would stop eating and purge if she did eat.

30. J.C. remained in partial hospitalization and Plaintiff incurred the cost.

31. Magellan also denied J.C.'s appeals from the August 21, 2015 denial of partial hospitalization.

COMPLAINT - 4
No.  2:18-cv-01838

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

**Residential Treatment From September 23, 2015 to October 22, 2015**

32. On September 20, 2015, J.C. expressed suicidal intent and plan and was unable to keep herself safe following communication with her mother. From September 21 to September 22, 2015, J.C. was admitted to Overlake Hospital for psychiatric stabilization and assessment.

33. On September 23, 2015, J.C. returned to residential treatment at ERC.

34. On September 28, 2015, Magellan denied benefits for J.C.'s residential treatment as of September 23, 2015 on the basis that treatment was not medically necessary.

35. J.C. remained in residential treatment and Plaintiff incurred the cost.

36. At the time of Magellan's denial, J.C. required residential treatment because she was a high suicide risk with thoughts of starving herself, consumed little to no food or fluid, purged the couple of times she did eat, and self-harmed when staff prevented her from purging. J.C. lost four pounds since her admission to Overlake Hospital on September 21, 2015.

37. Magellan also denied J.C.'s appeals from the September 28, 2015 denial of residential treatment.

38. J.C. continued in treatment at ERC at residential level of care until her discharge on January 21, 2016.

39. On June 30, 2016, Plaintiff submitted post-service claims with treatment records for all dates of service at ERC.

40. Magellan did not respond to the post-service claims.

41. On November 29, 2016, Plaintiff's counsel wrote to Magellan and requested payment of the post-service claims.

42. Magellan did not respond to Plaintiff or his counsel regarding the post-service claims.

43. Plaintiff refers to every preceding paragraph as though set forth in full in this claim for relief.

44. As a result of the above actions, and others, Defendant wrongfully denied Plaintiff's claim for benefits, in the following respects, among others:

COMPLAINT - 5
No.  2:18-cv-01838

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

    (a)    Failure to pay medical benefit payments due to Plaintiff at a time when Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

    (b)    Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for the denial of the claims for medical benefits;

    (c)    After the claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect the claims along with an explanation of why such material is or was necessary;

    (d)    Failure to pay for the level of care which Defendant determined was medically necessary; and

    (e)    Failure to properly and adequately investigate the merits of the claims and/or provide alternative courses of treatment.

45. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

46. Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

47. As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of all of the medical bills incurred, in a total sum to be proven at the time of trial.

48. As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

COMPLAINT - 6
No.  2:18-cv-01838

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

49. Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan.

## SECOND CLAIM FOR RELIEF
## EQUITABLE RELIEF

50. Plaintiff refers to every preceding paragraph as though set forth in full in this claim for relief.

51. As a direct and proximate result of the failure of Defendant to pay claims for medical benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a) Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate;

(b) A mandatory injunction requiring Defendant to immediately qualify Plaintiff for medical benefits due and owing under the Plan; and

(c) Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff as participant under the Plan.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for:

1. Payment of health insurance benefits due to Plaintiff under the Plan;

2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3. Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

4. For such other and further relief as the Court deems just and proper.

COMPLAINT - 7
No.  2:18-cv-01838

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

DATED this 20th day of December, 2018.

                LAW OFFICE OF MEL CRAWFORD

                By *s/Mel Crawford*
                    Mel Crawford, WSBA # 22930
                    Attorneys for Plaintiff
                    melcrawford@melcrawfordlaw.com

COMPLAINT - 8
No.   2:18-cv-01838

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342